419 P.2d 242

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Theodore R. NANCE and Donnie M. Smith, Defendants-Appellants.**

**No. 7961.**

Supreme Court of New Mexico.

Oct. 10, 1966.

**42**

Dan B. Buzzard, Clovis, for appellants.

Boston E. Witt, Atty. Gen., Myles E. Flint, Asst. Atty. Gen., for appellee.

OPINION

NOBLE, Justice.

Theodore R. Nance and Donnie M. Smith have appealed from the judgment and sentence imposed following a jury verdict of guilty of armed robbery.

The record discloses that the two defendants in this case were charged in Cause No. 5412, Curry County, New Mexico, with armed robbery and upon pleas of guilty were sentenced to the state penitentiary. Thereafter, in March, 1965, they were released from the custody of the warden of the state penitentiary upon a writ of habeas corpus issued by the district court of Santa Fe County, returned to Curry County, and again charged with the same offense. That trial resulted in a conviction by a jury, and the defendants were sentenced to the prison terms provided by law. This appeal followed.

The two defendants jointly rely upon asserted error in denying a motion to suppress confessions, and in denying motions for an instructed verdict at the close of the State's case and again at the conclusion of all of the evidence. Nance, in addition, claims error in denying his motion to dismiss the information as to him. We shall first discuss the questions applicable to both defendants.

They first assert that their confessions made to police officers should have been suppressed because Judge Scarborough, sitting in district court of Santa Fe County in the habeas corpus proceeding, concluded "that the statements made by the petitioners to the authorities were not voluntary statements," and that such determination makes the issue of voluntariness res judicata. We find no merit to the contention.

█ █ It appears to be the general rule that an order or judgment discharging one in habeas corpus is conclusive as to the illegality of the detention or imprisonment and is res judicata of those issues of law and fact necessary to the determination of the legality of the detention. Fulks v. Walker, 224 Ark. 639, 275 S.W.2d 873; Howell v. Bennett, 251 Iowa 1319, 103 N.W.2d 94; Barber v. Gladden, 215 Or. 129, 332 P.2d 641. However, compare Huffman v. Alexander, 197 Or. 283, 251 P.2d 87, 253 P.2d

289; United States ex rel. Volpe v. Jordan, 161 F.2d 390 (7th Cir. 1947); Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302. It is equally well established that: "The doctrine of res judicata, as applied to criminal cases, is subject to the same limitations as apply in civil cases." State v. Humphrey, 357 Mo. 824, 210 S.W.2d 1002; see Annotation 147 A.L.R. 992; 2 Van Fleet on Former Adjudication 1242–1249, § 628; Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180.

 Turning to our own decisions discussing the doctrine of res judicata in civil actions, Paulos v. Janetakos, 46 N.M. 390, 129 P.2d 636, 142 A.L.R. 1237, said that:

"* * * a prior judgment in a different cause of action between the same parties operates as an estoppel only as to questions, points or matters of fact in issue in that cause which were essential to a decision, and which were decided in support of the judgment. * * *"

See, also, State v. Johnson, 52 N.M. 229, 195 P.2d 1017. Paulos v. Janetakos, supra, likewise established in this jurisdiction the test for determining what is an issue of fact in the sense in which the term is used in decisions concerning res judicata, and said:

"It must be a fact, the determination of which is material, relevant, and necessary to a decision of the case upon its merits, (citing cases). It must not be a fact that comes collaterally or incidentally in question * * * or one that is not material or essential to a decision, even though put in issue by the pleadings. * * * or evidentiary facts from which the ultimate fact is inferred. * * *"

This court in Paulos then concluded that:

"* * * It is the ultimate fact, the fact without which the judgment would lack support in an essential particular. * * *

"'* * * the matter in issue or the point in controversy is that ultimate fact or state of facts in dispute upon which the verdict or finding is predicated.' * * *"

 The record before us discloses that the habeas corpus proceeding placed in issue the legality of defendants' imprisonment under the commitment issued in Cause No. 5412, Curry County. It is not disputed that the original commitment from which the habeas corpus proceeding arose resulted from pleas of guilty by each defendant. It is, therefore, obvious that since there was no trial, any statements made by these defendants to officers prior to their arraignment and sentence could not have been offered or used against them in that case, and the record of the entire proceeding in the district court shows no mention of any statement or confession made by either defendant.

Thus, the questions of whether statements were made by these defendants to officers and whether such statements were voluntary were not ultimate facts in that proceeding without which the judgment would lack support in an essential particular. The petitioners were successful in the habeas corpus proceeding because the court found that they had not been afforded effective counsel at trial. Any finding that their confessions were involuntary was gratuitous and not necessary to the decision. We conclude that the question of whether the statements or confessions of these defendants admitted in evidence in the case now before us was not made res judicata by the judgment in the habeas corpus proceeding.

 Defendants' claim of former jeopardy by reason of their discharge in habeas corpus is likewise without merit. The former jeopardy clause of the constitution does not preclude a retrial of a defendant whose sentence is set aside because of an error in the proceedings leading to the sentence or conviction. This is equally true where the conviction is overturned on collateral rather than direct attack, by petition for habeas corpus for example. McCleary v. Hudspeth, 124 F.2d 445 (10th Cir. 1941); United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448. When these defendants obtained a release from custody by the writ, they were not exonerated from the charges for which they were sentenced. The only effect of the release was to set aside their pleas and the sentence. They may then be again proceeded against as though there had been no prior proceedings. Patton v. State, 111 Ga. App. 853, 143 S.E.2d 518.

 It is well settled that the corpus delicti of the crime charged in the information cannot be established solely by the extra-judicial confession of the accused. State v. Dena, 28 N.M. 479, 214 P. 583. These defendants argue that the trial court should have sustained motions for a directed verdict either at the close of the State's case or at the conclusion of all of the testimony on the ground that the corpus delicti could only have been established by their confessions since there was no positive identification of either defendant by any eye-witness. This claim of error must be rejected. But the defendants misconstrue the meaning of the term "corpus delicti." The corpus delicti of a particular offense is established simply by proof that the crime was committed; the identity of the perpetrator is not material. See State v. McKenzie, 47 N.M. 449, 144 P.2d 161; Hopkins v. State, 75 Okl.Cr. 268, 130 P.2d 543; and Parnell v. State, 96 Okl.Cr. 154, 250 P.2d 474. When there is, in addition to a confession, proof of the corpus delicti established by independent evidence, the defendant's voluntary confession will support

a conviction. Gorum v. State, 60 Okl.Cr. 248, 63 P.2d 765. The corpus delicti in a prosecution for armed robbery, is in the instant case, sufficiently proven by the testimony of the complaining witness that he was the victim of a robbery by some person armed with a dangerous weapon. See State v. Hawkins, (Mo.), 165 S.W.2d 644; People v. Gilpin, 38 Cal.App.2d 24, 100 P.2d 356, 357; George v. United States, 75 U.S. App.D.C. 197, 125 F.2d 559 (1942); Wilder v. State, 30 Ala.App. 107, 1 So.2d 317, 318. As the record discloses substantial proof of the corpus delicti in this instance, we find no error in the denial of defendants' motions for a directed verdict.

Nance argues that, because the bill of particulars alleged that "the State has no knowledge whether or not the Defendant Theodore R. Nance was armed with a gun or knife at the time of the robbery," § 40A–1–14, N.M.S.A.1953, required that he be charged as an accessory rather than as a principal. We do not so construe the statute, which reads:

"A person may be charged with and convicted of the crime as an accessory if he procures, counsels, aids or abets in its commission and although he did not directly commit the crime and although the principal who directly committed such crime has not been prosecuted or convicted, or has been convicted of a dif-ferent crime or degree of crime, or has been acquitted, or is a juvenile."

It is true that at common law the strict rules require one who participates by aiding or abetting to be charged as an accessory rather than as a principal, but most states by statute have relaxed the strict common law rule and it appears now to be the general rule that an accused may be indicted as principal even though at common law it would have been necessary to charge him as an accessory. 27 Am.Jur. Indictments and Informations, § 93 and cases cited.

Section 41–6–34, N.M.S.A.1953, reads:

"Every person concerned in the commission of an offense, whether he directly commits the offense or procures, counsels, aids or abets in its commission, may be indicted or informed against as principal."

State v. Ochoa, 41 N.M. 589, 72 P.2d 609, held that the distinction between an accessory before the fact and a principal was abolished in this State so that every person concerned in the commission may be prosecuted, tried, and punished as a principal. In endeavoring to arrive at the true construction of statutes which may be of doubtful meaning, courts should be guided by the well-established rules governing such construction. We are committed to an acceptance of the intent of the language em-

ployed by the legislature rather than the precise definition of the words themselves. See In re Ortiz's Estate, 31 N.M. 427, 246 P. 908; State v. Grissom, 35 N.M. 323, 298 P. 666; State v. Aragon, 55 N.M. 423, 234 P.2d 358. And, in construing a statute, the legislative intent must be given effect by adopting a construction which will not render the statute's application absurd or unreasonable. Hahn v. Sorgen, 50 N.M. 83, 171 P.2d 308. Not only must the legislative intent be given effect, but the court will not be bound by a literal interpretation of the words if such strict interpretation would defeat the intended object of the legislature. In re Vigil's Estate, 38 N.M. 383, 34 P.2d 667, 93 A.L.R. 1506.

Courts will not add words except where necessary to make the statute conform to the obvious intent of the legislature, or to prevent its being absurd. Morruzi v. Federal Life & Cas. Co., 42 N.M. 35, 75 P.2d 320, 115 A.L.R. 407. But where the language of the legislative act is doubtful or an adherence to the literal use of words would lead to injustice, absurdity or contradiction, the statute will be construed according to its obvious spirit or reason, even though this requires the rejection of words or the substitution of others. State v. Southern Pacific Co., 34 N.M. 306, 281 P. 29; Janney v. Fullroe, 47 N.M. 423, 144 P.2d 145.

It can safely be asserted that when the legislative act is read as a whole and in conjunction with other statutes in pari materia, there is nothing to indicate an intention to change the Ochoa rule or to require one who aids or abets in the commission of a crime to be charged differently than as provided in § 41-6-34, supra. Applying the rules which are but an aid to interpretation of the true meaning intended and construing § 40A-1-14, supra, so as to accomplish the ends sought by the legislature, as we are required to do, C. de Baca v. Baca, 73 N.M. 387, 388 P.2d 392, it is apparent to us that the legislature did not intend to require one who aids or abets in the commission of a crime to be charged as an accessory. On the contrary, it was the obvious intent to extend the statute then in force so as to permit an accessory to be prosecuted even though the one who directly committed the crime was either not prosecuted, had been acquitted, was a juvenile, or had been convicted of a different crime or degree thereof.

It is clear to us that the word "crime," as used in the statute means the principal offense, as in this case "armed robbery," and that the term "as an accessory" is merely describing in different terms one who aids and abets in the commission of the crime, and authorizes such person to be charged with and convicted of the crime. We find nothing in the statute

indicating an intent to make one who aids and abets in the commission of a crime a separate offense distinct and different from the crime committed by the one actually perpetrating it. The purpose of the legislature to authorize charging and convicting an accessory as a principal is made evident when we consider that no different penalty is provided by law for one who aids and abets. The statute is to be read as though the words "as an accessory" were omitted. We think this effects the obvious legislative intent and prevents an absurd and unreasonable meaning.

With the right to, and in this case, the furnishing of a bill of particulars, there is nothing to indicate that the defendant Nance was misled by the charge.

Our determination that § 40A–1–14, supra, does not require an accessory to be charged as such answers in the negative the contention that § 41–6–34, supra, was repealed by implication. We find no conflict in the two statutes. Section 40A–1–14, supra, merely permits prosecution of an accessory under additional circumstances.

Finding no error, the judgment and sentence appealed from must be affirmed.

It is so ordered.

CHAVEZ, J., and JOE W. WOOD, J., Ct. App., concur.